## Ritter v. Wenrich

*David Sharman, Jr.,* for plaintiff.

*Allen K. Grim* and *Stevens & Lee,* for defendant.

SCHAEFFER, P. J., May 6, 1935.—One evening after dark the plaintiff and a companion with three duly licensed dogs set out to hunt raccoons. The dogs, which had been trained to pursue only raccoons, skunks or opossums, took up a trail and the hunters followed. The dogs came to the premises of the defendant, who, in his rear

yard, had two hutches or pens of rabbits. When the defendant heard the barking of the dogs, he took a gun and went into the yard and, under the alleged impression that the dogs were attacking his rabbits, shot and killed two of the dogs. At that time the plaintiff and his companion were "about a square" away, following their dogs. They could see the lights in defendant's home and were within hearing of the dogs and of the shots fired by defendant.

The jury returned a verdict in favor of the plaintiff. The defendant thereupon moved for a new trial and for judgment n. o. v.

Upon argument defendant abandoned his application for a new trial. He bases his motion for judgment upon the contention that it cannot be said that the dog at the time of the shooting was "accompanied by an owner or handler", as plaintiff was admittedly "about a square" away. The Dog Law of July 11, 1917, P. L. 818, in section 21 (53 PS §2732) provides that any person may, without liability, kill any dog, whether licensed or not, "which he sees in the act of pursuing, worrying, or wounding any livestock, or attacking human beings". The same provision appears in the Dog Law of May 11, 1921, P. L. 522 (3 PS §481). The term "livestock" as defined by the Act of 1917 does not include confined domesticated rabbits; but as defined by section 2 of the Act of 1921 it does. The verdict, however, must be construed as a finding that the defendant did not make out his contention that the dogs in question were worrying his rabbits when he shot them. Section 21 of the Dog Law of 1917 and section 22 of the Dog Law of 1921 both specify that "Licensed dogs when accompanied by their owner or handler shall not be included under the provisions of this section, (i. e. to be liable to be killed by any person without liability) unless caught in the act of worrying, wounding, or killing any livestock, or attacking human beings." So the defendant contends that the dog here killed was not "accompanied" at the time by its owner or handler, inasmuch as plaintiff was about a

square in the rear. Now, the word "accompanied" appears again in section 24 of the Dog Law of 1917 (53 PS §2735) and in section 25 of the Dog Law of 1921, as amended by section 11 of the Act of May 6, 1927, P. L. 833, 839 (3 PS §484), both of which provide that "The owner or keeper of every dog shall at all times between the hours of sunset and sunrise of each day keep such dog either—(a) confined . . . or (b) firmly secured. . . or (c) under the reasonable control of some person or when engaged in lawful hunting accompanied by an owner or handler." This section of the Act of 1921, as amended, contains the further provision that "any police officer may kill any dog found running at large between the hours of sunset and sunrise and unaccompanied and not under the control of the owner or handler."

When defining the word "accompanied" as used in these acts, we must have in mind that the plaintiff was hunting raccoons and that the Act of May 8, 1929, P. L. 1656 (34 PS §702), provides "that raccoons shall be hunted for and killed only between one hour before sunset and one hour after sunrise, except raccoons taken in traps." So the plaintiff and his companion were acting in compliance with the law in hunting raccoons with licensed dogs at night. To accompany is to go with, to escort, to attend. Certainly the legislature did not mean that a dog engaged in lawful hunting in order to be said to be accompanied by the owner, had to be held in leash; or they would have said so: cf. section 23 of the Act of 1917. And the legislature by express language, set out above, has stated that a dog "engaged in lawful hunting" may be "accompanied by an owner or handler." Now it is common knowledge that a dog in hunting will scurry about in search of scents and trails of game and will endeavor to follow a trail when once picked up. If this be true, can we say as a matter of law that when a dog gains a lead of a certain distance over its owner or handler it is no longer accompanied by him? What degree of separation during an actual hunt would warrant

such a conclusion? We could not hold that a dog which got out of the sight of the hunter was unaccompanied by the latter, for such a rule would render impracticable all hunting at night. Nor can we see any justification for holding as a matter of law that a dog has escaped the company of the hunter, if the facts are that the dog is upon the trail of game and that the hunter is actively following the dog so as to take such game.

We find nothing in this legislation which would indicate an intention upon the part of the legislature to render unlawful practices which had become usual and ordinary in hunting.

The defendant here was not a police officer and the right of such officer to kill dogs running at large is not here involved.

And now, to wit, May 6, 1935, the rules for a new trial and for judgment n. o. v. are discharged.